FILED
SUPERIOR COURT
OF GUAM

2021 JAN 11 PM 1: 33

CLERK OF COURT

BY: _____

**IN THE SUPERIOR COURT OF GUAM**

**SMALL CLAIMS DIVISION**

PATSY ROSE D. TAITINGFONG,      )
                                )   **SMALL CLAIMS CASE NO: SD61 15-20**
    Plaintiff           )
                                )
    vs.                 )   **DECISION AND ORDER**
                                )
ROSE RICHARD                    )
                                )
    Defendant            )
                                )
                                )
_____)

## INTRODUCTION

The matter came on for trial via Zoom Videoconference on November 3, 2020 (and continued to December 2, 2020) before the Honorable Benjamin C. Sison, Jr. who took the matter under advisement. The parties appeared Pro Se. Having reviewed the evidence presented and the applicable law, the Court now issues its Decision and Order.

## FACTS

Defendant Rose Richards, as Landlord entered into a lease agreement with Plaintiff, Patsy Rose D. Taitingfong, as tenant, for the lease of Defendant's home (the "Lease"). Plaintiff filed this instant lawsuit for the recovery of her One Thousand Five Hundred Dollar ($1,500.00) security deposit under the Lease.

Defendant however claims that after the surrender of the leased premises, Plaintiff was responsible for certain damage to the leased premises caused by Plaintiff's negligence or in the alternative, Plaintiff failed to timely notify Defendant of the damages during the lease term as

1

required under the Lease. Defendant further claims that Plaintiff failed to return the leased premises in a clean condition as required under the Lease. Consequently, Defendant claims that the costs of repairs chargeable to Plaintiff totaled One Thousand Seven Hundred Fifty Dollars ($1,750.00), and that said amounts were properly deducted from Plaintiff's security deposit as authorized under the Lease, resulting in no sum remaining under the security deposit due back to Plaintiff. Furthermore, Defendant claims to have cleaned the leased premises to a condition which Plaintiff was obligated to restore under the Lease.

Plaintiff counters that she would not be liable for any such damages claimed by Defendant because she returned the leased premises in a clean condition required under the Lease and that any damages to the leased premises were either pre-existing at the time she took possession of the premises, or in the alternative that said damages were a result of ordinary wear and tear.

At trial, evidence was presented: 1)in the form of photographs of the premises after Plaintiff's tenancy, 2) testimony from the parties, 3) testimony from Defendant's daughter, 3) testimony from the Defendant's realtor who she retained to facilitate Plaintiff's move out and reletting the leased premises, 4) testimony from the contractor who Defendant retained to make repairs to the leased premises and 5) other relevant documents.

## LAW AND ARGUMENT

Defendants' liability for the damages claimed by Plaintiff may be found in the parties' written lease agreement. Paragraph 4A of the lease provides that "All or any portion of the security deposit may be used, as reasonably necessary to...(ii) repair damage, excluding ordinary wear and tear, caused by Tenant...,(iii) clean premises, if necessary, upon termination of the tenancy..." Paragraph 11(A) in pertinent part provides that Tenant shall be charged for all damage to the leased

2

premises as a result of Tenant's failure to report a problem in a timely manner. Paragraph 26(A) of the lease provision entitled "Tenant's Obligation upon Vacating Premises", further provides that Tenant(s) are obligated to remove all debris and deliver the leased premises in a restored clean condition.

## A. RESTORATION TO A CLEAN CONDITION

The court finds after reviewing the evidence presented, that Plaintiff had failed to clean the leased premises to a condition as required under the lease. Defendant's realtor and contractor testified that the cost of cleaning the leased premise to a condition required under the Lease, would have been between Two Hundred and Five Hundred Dollars ($200.00-$500.00) if a cleaning company were retained. The court finds the amount of three hundred dollars ($300.00) properly chargeable to Plaintiff in this regard and deductible from Plaintiff's security deposit.

## B. COSTS OF REPAIRS

Turning to the issues of repairs, Defendant's contractor (the "Contractor") testified during trial to have undertaken the following work with respect to the leased premises and the estimated cost of materials and labor time he expended for each item of work.[1]

| Work | Materials Cost | Labor Hours |
|------|----------------|-------------|
| 1. Sealed Holes in Wall | $25 | 1 |

---

[1] Certain work undertaken by Contractor such as repairs to a Boiler and the entrance door, Defendant agrees were not charged to Plaintiff.

3

| | | |
|---|---|---|
| 2. Touch Up Paint- Kitchen Cabinets | $4-6 | 2 |
| 3. Repaired Doors and Cabinet Hinges | $25 | 4 |
| 4. Sealed Kitchen Sink leak. | $80 | 1 |
| 5. Replaced Switch and 2 lightbulbs, and glued Conduit moulding back to ceiling. | $33.50 | 4 |
| 6. Repaired Bathroom Door | $45.00 | 2 |
| 7. Repaired Sliding door | $48.00 | 2 |

The court finds that only repair item 1 above is properly chargeable to Plaintiff. The court finds that the holes that were sealed by the Contractor were initially created as a result of Plaintiff's request for the installation of an air condition unit and that Plaintiff had a duty to restore the leased premises to its original condition under the lease.

With respect to item 2, the Contractor testified that scratches on the kitchen cabinets necessitating their repainting were caused by fingernails when closing and opening doors and because the original paint did not not have any protective coating. The court therefore finds the damage to the kitchen cabinets to be due to original wear and tear and not chargeable to Plaintiff.

As to item 4, the Contractor indicated that there was a leak around the kitchen sink which caused water to seep through. However the Contractor also testified that "it was a very very old sink." The court therefore finds that damage to the seal around the sink was due to ordinary wear and tear.

As to the glueing of the conduit molding back to the ceiling under item 5, the Contractor testified that "Guam weather caused the molding to fall". Accordingly the court finds that the damage to the conduit molding was not due to Plaintiff's negligence but also due to ordinary wear and tear.

4

With respect to the bathroom door repair under Item 6, the Contractor testified that the door was wet in the bottom necessitating that he remove the door and cut off the wet portion in its repair. He further stated that "when someone steps out of shower it (the door) got wet and warped." The court finds that the door became wet and warped based on ordinary and reasonable usage of the shower next to the door, and not due to any negligence on the part of Plaintiff. Defendant's argument that Plaintiff should have timely notified Defendant in advance to minimize damage to the door is not supported by any evidence and therefore rejected by the court.

With respect to Item 7 and the repair of a sliding door, the Contractor testified that rusted rolls and a metal hinge broke caused by forceful opening and closing of the door. The court finds that even if the Plaintiff exercised greater than ordinary force in the opening and closing of the doors, the court finds that the fact that the door rolls and metal hinges were rusted contributed greatly to why these items broke. There is no evidence to show that the rust was due to any negligence on the part of the Plaintiff and the rust was likely caused naturally through age and time, in other words, due to ordinary wear and tear.

With respect to Item 4 repair/replacement of door hinges and the repair of an electrical switch under Item 5, Defendant failed to show that such damage was due to the any negligence of the Plaintiff.

In summary, the court finds that only Item 1 repairs are chargeable to Plaintiff. In calculating the amount to be the charged to Plaintiff, the court looks to the contractual agreement executed by Defendant and the Contractor. Under the agreement, the Contractor was paid One Thousand Eighty Dollars ($1080.00) for labor costs associated with all the repair work Defendant claims to be chargeable to Plaintiff. At trial the Contractor estimated that all the work undertaken amounted to sixteen (16) hours of work. This translates to Sixty Seven Dollars and Fifty Cents

($67.50) per labor hour.[2] Moreover, the Contractor testified specifically that as to Item 1 repairs, the cost of materials for the repair amounted to Twenty Five Dollars ($25.00) and took One (1) labor hour to complete. The court therefore finds the amount of Ninety Two Dollars and Fifty Cents ($92.50) to be properly chargeable to Plaintiff and deductible from Plaintiff's security deposit.[3]

## CONCLUSION

For the foregoing reasons, JUDGMENT shall be rendered on behalf of the Plaintiff and against the Defendant in the amount of One Thousand One Hundred Seven Dollars and Fifty Cents ($1,107.50).[4]

**SO ORDERED this** _8TH_ **day of** _JANUARY_ _, 2021._

_____
BENJAMIN C. SISON, JR., Magistrate Judge
Superior Court of Guam

---

[2] $1080.00/16

[3] $25.00 + $67.50

[4] $1500.00 - $300.00 - $92.50

6